Pool, Respondent, vs. Milwaukee Mechanics Insurance Company, Appellant.

Pool, Respondent, vs. Farmers Fire Insurance Company, Appellant.

*November 6 — November 24, 1896.*

(1) *Change of venue: Prejudice of people: Abuse of discretion.*   (2) *Jurors: Challenge for cause: When retention of objectionable juror not prejudicial.*   (3, 4) *Insurance against fire: Increase of hazard: Use of fumigators: Special verdict.*

1. Where the affidavits in support of an application for a change of venue on the ground of prejudice of the people consisted mainly of statements that various persons named had stated that an impartial trial could not be had in the county, while in opposition were the affidavits of most of the persons named denying such statements, supplemented by affidavits of persons who, from the nature of their business, would be likely to hear statements indicating prejudice, if any existed, that they had heard none, it was not an abuse of discretion for the trial judge to deny the application.

2. It is not prejudicial error to overrule the challenge of a juror for cause, unless it is shown that an objectionable juror was forced upon the challenging party and sat as a juror after such party had exhausted his peremptory challenges.

3. In an action upon policies of insurance on a stock of dry goods, in which the defendants set up as a defense that the use of sulphur fumigators had increased the hazard, an objection to a question whether the fumigators were in general use for the purpose of fumigation, on the ground that it was incompetent, irrelevant, and improper, was insufficient to raise the question whether the inquiry should have been confined to the use of fumigators for goods similar to those covered by the policies.

448     SUPREME COURT OF WISCONSIN.     · [94

Pool vs. Milwaukee Mechanics Ins. Co.    Same vs. Farmers Fire Ins. Co.

4. A question of the special verdict as to whether the fumigators used by the plaintiff were in common use for the purpose of fumigating stocks of dry goods is *held* sufficiently to cover the question whether it was usual to fumigate stocks of dry goods with sulphur fumigators.

APPEALS from judgments of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Actions to recover on fire insurance policies. Such policies contain the following provisions: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the hazard be increased by any means within the control or knowledge of the insured. If fire occur, the insured shall . . . protect the property from further damage, shall forthwith separate the damaged from undamaged personal property, put it into the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon. . . . The assured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination, under oath, by any person named by this company, and subscribe the same, and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable places as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made. In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers; the assured and this company each selecting one, and the two so chosen shall then select a competent and disinterested umpire. The appraisers, together, shall estimate and appraise the loss, stating, separately, sound value and damaged, and, failing to agree, shall submit their differences to the umpire, and the

award, in writing, of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire. The company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relative to the appraisal, or to any examination herein provided for."

The policies covered a stock of dry goods consisting of such merchandise as is ordinarily kept for sale in a retail dry-goods store. Such stock was situated in a three-story brick building and basement. On the 29th day of April, 1894, plaintiff, for the purpose of freeing the goods from moths, used some Johnson fumigators, so called. These fumigators consisted of blocks of sulphur in the form of cubes, each surrounded on all the surfaces but the top with some substance to prevent the molten sulphur from running, and having in the top surface a wick to facilitate igniting the sulphur. Four of the cubes, placed in a box about four inches square and one and one-half inches high, open at the top, were called a candle. The fumigators were used in the following manner: When the store was closed for the day, that being about 9 o'clock p. m., there were placed in the basement two lots of the candles, one in what was called the cloak room and one in the carpet room. Each lot was put in an iron pan, placed on three thicknesses of wire door mats on the floor. On the ground floor several lots of fumigators were placed in substantially the same way. None of the goods was in the immediate vicinity of the fumigators so placed. After all were in place they were lighted. Plaintiff's employees and the person of whom the fumigators were purchased, and under whose charge they were arranged, then left the building, and closed and locked the doors. That was between 9 and 10 o'clock. From the outside of the building, by looking through the windows, they

watched the burning sulphur for some time, then all went away but one, who continued to watch till nearly 12 o'clock, at which time all the fumigators were apparently burned out, when he went home. After about half an hour the property was discovered to be on fire. Such fire caused the damage for which a recovery is sought under the policies.

Defendants claimed, as a defense, that the use of the fumigators increased the hazard of loss by fire, and hence avoided the policies.

After the fire A. B. Noble, local agent for the company, directed the damaged goods to be removed to the Colby House, a building across the street, where they could be inventoried, examined, taken care of, and the damage appraised. Noble had no other authority at this time than that of local agent. Later, duly authorized adjusters adjusted the loss, in the course of which they agreed with plaintiff that the value of the goods saved was $10,000, and that his actual loss was $42,000. At the time of such adjustment of the loss, such adjusters had full knowledge of the use of the fumigators, and when Noble directed the removal of the goods to the Colby House he had such knowledge.

It was claimed on the part of plaintiff that, if the use of the fumigators is sufficient to avoid the policies, the action of defendants' agents, as above set forth, with knowledge of such use, constitutes a waiver of the forfeiture. In the action against the *Farmers Fire Insurance Company*, an application was made for a change of venue on the ground of the prejudice of the people, which was denied. There were some exceptions to the rulings of the court during the impaneling of the jury, which will be noted in the opinion.

In each case there was a special verdict. The following are some of the questions and answers, numbered without reference to the numbers in the verdicts, which are found in both: (1) Was it necessary for plaintiff to fumigate his stock of goods in order to preserve and protect the same.

Answer. Yes.   (2) Were the fumigators used by the plaintiff proper and adapted to that purpose?   Answer. Yes. (3) Were the same in common use for that purpose?   Answer. Yes.   (4) Do you find from the evidence that the use of the fumigators increased the hazard under the terms of the policy?   Answer. No.   (5) If the plaintiff was in fault by the use of these fumigators, did the defendant, by its acts, waive the same?   Answer. Yes.

Several exceptions to the judge's charge, and other exceptions, were taken, which, so far as necessary, will be noticed in the opinion.   A motion, in each case, to set aside the verdict and for a new trial, was made and denied, and thereupon judgments were rendered, from which these appeals were taken.

For the appellants there were briefs by *Mylrea, Marchetti & Bird,* and oral argument by *W. H. Mylrea* and *C. B. Bird.*

*W. L. Windom,* attorney, and *Gabe Bouck,* of counsel, for the respondent.

MARSHALL, J.   In the appeal of the *Farmers Fire Insurance Company* there is presented the question whether the court erred in refusing the motion to change the place of trial on account of the prejudice of the people.   The motion was regularly made, based on affidavits alleging facts tending to show that such prejudice existed.   Such facts consisted largely of statements that various persons not named, and others named, had stated to the persons making the moving affidavits that the insurance companies concerned in the loss could not obtain a fair trial in the county of Ashland.   The case was met, on the part of the plaintiff, by affidavits of most of the persons named in such moving papers, denying the making of such statements, and alleging that they entertained a contrary view.   There was also a large number of opposing affidavits, to the effect that the

business of the affiants, and their facilities for knowing the sentiments of the people, were such that, if the prejudice complained of existed, they would be liable to know it, and that they had not heard any statements made indicating such prejudice, and that in their opinion there was none.

The rule is well established that the granting or denying of an application to change the place of trial on the ground of the prejudice of the people is in the sound discretion of the trial court, and that its determination will not be disturbed on appeal unless it clearly appears that there has been an abuse of such discretion. *Lego v. Shaw*, 38 Wis. 401; *Ross v. Hanchett*, 52 Wis 491; *Schafer v. Shaw*, 87 Wis. 185. It is, in effect, held in *Cyra v. Stewart*, 79 Wis. 72, that when facts and circumstances are set forth sufficient to enable the court to judge for itself that there is sufficient ground for believing a fair trial cannot be had, met only by affidavits expressing an opinion to the contrary, the change should be granted, and that a denial constitutes reversible error. But such is not this case. Here, as stated, the facts consisted mainly of allegations that various persons named stated that an impartial trial could not be had in the county. Most of such persons, by affidavit, denied making any such statements, or that they entertained such belief. Such affidavits were supplemented by others made by hotel keepers, physicians, police officers, editors, real-estate agents, and others, who would be likely, from the nature of their business, to hear statements indicating prejudice if any existed, and they testified that they had heard none. The case thus made up in opposition to the change is quite as strong in favor of the ruling of the trial court as in *Rowan v. State*, 30 Wis. 129, where this court said: "It is said the affidavits in support of the motion were strong and positive in the statements showing the existence of prejudice and a general feeling of hostility against the defendant, while the affidavits on the part of the state are merely negative in their

character.   This is not an entirely accurate view to take of
such evidence.   If such prejudice prevailed as to require a,
change of the place of trial, it seems incredible that such
persons, whose business rendered it necessary to constantly
· meet and converse with considerable numbers of their fel-
low citizens, should be entirely ignorant of its existence."
That fits this case.   Clearly, it cannot be said that there
was an abuse of judicial discretion in denying the defend-
ant's motion.

In the appeal of the *Farmers Fire Insurance Company*
there is also presented the question whether the court
erred in  overruling a challenge of a juror for cause, and, if.
so, whether that is reversible error, in view of the fact that
the objectionable juror did not sit upon trial of the case.
On this point, *People v. Casey*, 96 N. Y. 115, is confidently
relied upon.   That is to the effect that if, by the erroneous
ruling, the party is obliged to exhaust all his peremptory:
challenges, the error is harmful.   The record here does not
show such a case.   It shows that all the peremptory chal-
lenges were exhausted, but not that the last challenge was.
used in striking from the panel the objectionable juror, or
that the ruling was the cause which compelled such ex-
haustion of the challenges.   The true rule, we hold, is laid
down in *Spies v. People*, 122 Ill. 1, to the effect that it is not
prejudicial error to overrule a challenge for cause, unless it
is shown that an objectionable juror was forced upon the
party, and sat upon the case after such party had exhausted
his peremptory challenges.   This court substantially adopted
that view in *Grace v. Dempsey*, 75 Wis. 313, where it is said
in the opinion by Mr. Justice CASSODAY, discussing a similar
subject, " The statute expressly precludes this court from
reversing any judgment for any error not affecting the sub-
stantial right of the appellant.   R. S. sec. 2829."   There is
nothing in the record to indicate that by such ruling the de-
fendant was in any way prejudiced.

Patrick Hanrahan, a witness for plaintiff, was asked the question, " Were the fumigators in general use for the purpose of fumigation? " to which defendants objected as incompetent, irrelevant, and improper.   It was insisted that the question was too broad, in that it should have been confined to the use of fumigators for goods similar to those covered by the policies.   The answer to that is, if the contention is right, that the objection was not sufficiently specific; it did not suggest or direct the attention of the trial judge to the precise ground of inadmissibility claimed.   *Bowman v. Van Kuren,* 29 Wis. 209; *Neis v. Franzen,* 18 Wis. 537; *Tomlinson v. Wallace,* 16 Wis. 224.

Error is assigned because the court refused to include in the special verdict questions directed specially to the subject of whether it was usual to fumigate stocks of dry goods with sulphur fumigators.   The question submitted, " Were the same in common use for that purpose? " following the questions directed to the use of the fumigators in the particular instance, was certainly sufficient.   Probably the question whether the use of the fumigators increased the hazard of itself sufficiently covered the whole subject material to the issues between the parties.

On a former appeal in one of these cases — decision reported in 91 Wis. 530 — the judgment was reversed for failure of the trial court to submit to the jury the question whether the use of the fumigators increased the hazard.   On the trials which resulted in the judgments appealed from the jury specifically found in each case, on that question, in favor of the plaintiff, and we cannot say, after a careful examination of the record, but that there is a legitimate foundation in the evidence for such findings; hence they must stand as verities.   Neither in the briefs of defendants' counsel nor in their arguments before the court were any exceptions urged to the judge's charge submitting the question covering that subject to the jury.   It appears that the defense

of forfeiture on the ground that plaintiff increased the hazard by the use of the fumigators, within the meaning of the policies, failed.

There are some other questions presented in the defendants' briefs, but none of sufficient importance to warrant a particular reference to them. Suffice it to say that all have been carefully considered without discovering any reversible error.

*By the Court.*— The judgment in each case is affirmed.