STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Edward RAMOS, Defendant-Appellant.

Supreme Court

*No. 94–3036–CR. Oral argument May 1, 1997.—Decided June 20, 1997.*

(Also reported in 564 N.W.2d 328.)

12

ABRAHAMSON, C.J., concurs.
GESKE, J., joins.
CROOKS, J., dissents.
BRADLEY, J., joins.

For the plaintiff-respondent-petitioner there was oral argument by *Paul Lundsten*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Eduardo M. Borda*, Milwaukee.

¶ 1.  DONALD W. STEINMETZ, J.  The issue in this case is whether the trial court's failure to remove a juror for cause constitutes reversible error when a defendant is forced to correct the trial court's error by using one of his or her statutorily provided peremptory challenges. We hold that the use of a peremptory challenge to correct a trial court error is adequate grounds for reversal because it arbitrarily deprives the defendant of a statutorily granted right.

¶ 2.  The facts leading up to this case are tragic. On the evening of November 15, 1993, the defendant, Edward Ramos, suffocated Brandon Webster, his girlfriend's two-year-old child. Ramos was subsequently arrested and was charged with first-degree intentional homicide in violation of Wis. Stat. § 940.01(1). Ramos never denied killing the child, but he argued that he acted recklessly, not intentionally. As such, Ramos opted for a jury trial to determine whether he acted intentionally. The trial was held before the Milwaukee County Circuit Court, Judge Patricia D. McMahon.

¶ 3.  Due to the nature of the crime with which Ramos was charged, potential jurors underwent extensive voir dire. The panel faced questions from the trial court, the prosecutor, and defense counsel in an attempt to impanel an unbiased, impartial jury. During defense counsel's questioning of one prospective juror, the juror indicated that it was possible that she could not be a fair or impartial juror. When pressed, the juror stated: "Just knowing that the child was suffocated, I guess I couldn't be fair." The defense attorney asked her: "So you could not be fair to this man?" The juror replied with an unequivocal "No."

¶ 4.  During a conference in the judge's chambers, Ramos' counsel moved to strike the juror for cause, arguing that the juror stated that she could not be fair

14

and impartial. After both the prosecutor and the judge said that they did not recall the juror saying that she could not be fair, defense counsel asked that the reporter read back the juror's responses to clear up any confusion. The court declined to have the answers read back. Twice more, Ramos' counsel asked the court to ask the reporter to read back the juror's answers because the defense attorney was "still of the mind that she [the prospective juror] said she could not be fair, impartial in this case." Both times, the requests of Ramos' counsel were not met, and the court did not strike the juror for cause.

¶ 5. Ramos subsequently removed the juror through the use of his first statutorily granted peremptory challenge. Consequently, the juror did not participate in the final adjudication of Ramos' guilt or innocence. On April 7, 1994, a jury found Ramos guilty of first-degree intentional homicide.

¶ 6. Ramos appealed to the court of appeals. The court of appeals decided that a trial court's erroneous refusal to remove a potential juror for cause, which effectively forced the defendant to use a peremptory challenge to remove the juror, violated the defendant's right to due process as defined by state law. The court of appeals remanded the case to the trial court for a new trial. State v. Ramos, No. 94–3036-CR, unpublished slip op. (Wis. Ct. App. Sept. 12, 1996). The State appealed to this court, and we now affirm the decision by the court of appeals.

¶ 7. "The question of whether a prospective juror is biased and should be dismissed from the jury panel for cause is a matter of the circuit court's discretion." State v. Gesch, 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992), citing State v. Louis, 156 Wis. 2d 470, 478, 457

N.W.2d 484 (1990), *cert. denied*, 498 U.S. 1122 (1991) (citations omitted). This court will find an erroneous exercise of discretion if a circuit court's discretionary decision is based on an error of law. *See id.*, citing *In re Marriage of Schulz v. Ystad*, 155 Wis. 2d 574, 599, 456 N.W.2d 312 (1990).

¶ 8. In Wisconsin, a juror who "has expressed or formed any opinion, or is aware of any bias or prejudice in the case" should be removed from the panel. Wis. Stat. § 805.08(1). Additionally, "[i]f a juror is not indifferent in the case, the juror shall be excused." *Id.*

¶ 9. In the case at bar, the challenged prospective juror should have been removed for cause. She clearly expressed that she could not be a fair and impartial juror in the case. The Wisconsin Statutes provide that "[a]ny party objecting for cause to a juror may introduce evidence in support of the objection." *Id.* Ramos' attorney attempted three times to introduce such evidence by having the reporter read back the challenged jurors' answers. Unfortunately, the trial court prohibited him from doing so. We conclude that the trial court should have allowed the reporter to read back the responses and should have dismissed the challenged juror for cause. Therefore, we find that the failure to dismiss the challenged juror for cause was an erroneous exercise of discretion by the trial court.

¶ 10. Under the statutes, Ramos was entitled to seven peremptory challenges to strike potential jurors from the panel. Wis. Stat. §§ 972.03[1] and 972.04(1).[2] The statutes provide that a defendant "is entitled to"

---

[1] Wis. Stat. § 972.03 provides in relevant part:

When the crime charged is punishable by life imprisonment the state is entitled to 6 peremptory challenges and the defendant is entitled to 6 peremptory challenges. . . .Each side shall be allowed

and "shall be allowed" the stated number of peremptory challenges. The word "shall" is presumed to be mandatory when it appears in a statute. *Wagner v. State Medical Examining Bd.*, 181 Wis. 2d 633, 643, 511 N.W.2d 874 (1994). Therefore, we find that Ramos had a right to the maximum amount of peremptory challenges prescribed by the statute.

¶ 11. Ramos contends that the failure to dismiss the juror for cause forced him to spend one of his peremptory challenges to correct the trial court error, thereby depriving him of his statutorily guaranteed right to a full complement of peremptory challenges. The State, relying largely on the United States Supreme Court decision in *Ross v. Oklahoma*, 487 U.S. 81 (1988), contends that despite the trial court error, Ramos is not entitled to a new trial because the jury that ultimately decided Ramos' case was impartial.

¶ 12. In *Ross*, the United States Supreme Court considered the issue of when a trial court's erroneous refusal to strike a juror for cause constitutes reversible error. *Ross*, a capital case, involved a prospective juror who had stated that he would vote to impose the death penalty automatically if the jury found the defendant guilty. Based on this statement, the defendant moved to have the juror struck for cause. The trial court refused this request. However, the defendant struck the juror using one of his peremptory challenges. On appeal, the defendant asserted that the trial court's error in failing to remove the juror for cause violated

one additional peremptory challenge if additional jurors are to be impaneled under s. 972.04(1).

[2] Wis. Stat. § 972.04(1) provides, in part, that "[t]he number of jurors impaneled shall be prescribed in s. 756.096(3)(a) or (am), whichever is applicable unless. . .the court orders that additional jurors be impaneled."

"both his Sixth and Fourteenth Amendment right to an impartial jury, and his Fourteenth Amendment right to due process." *Id.* at 85.

¶ 13. In the first part of the opinion, the United States Supreme Court held that requiring a defendant to use a peremptory challenge to remove a juror who should have been removed for cause did not violate the defendant's Sixth Amendment right to an impartial jury. *Id.* at 88. The Court also stated that peremptory strikes were not of a constitutional dimension and that they are merely a means to achieving an impartial jury. *Id.* As long as the jury was impartial, the fact that the defendant had to use a peremptory challenge to achieve the result did not mean that the Sixth Amendment was violated. *Id.*

¶ 14. In the second part of the opinion, the Court considered the defendant's claim that the trial court's failure to remove the juror for cause violated his Fourteenth Amendment right to due process by arbitrarily depriving him of the full complement of peremptory strikes allowed under Oklahoma law. In discussing this issue, the Court noted "that the right to exercise peremptory challenges is 'one of the most important of the rights secured to the accused.' " *Id.* at 89, quoting *Swain v. Alabama*, 380 U.S. 202, 212 (1965). The Court also stated that "[t]he denial or impairment of the right is reversible error without a showing of prejudice." *Id.* at 89.

¶ 15. In analyzing whether the defendant's right to exercise peremptory challenges was denied or impaired, the Court ruled that these challenges were creatures of state law and that it was "for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* Thus, the Supreme Court reasoned

18

that "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.*

¶ 16.   Oklahoma law requires that a defendant who disagrees with the trial court's ruling on a for-cause challenge must use his or her peremptory challenges to remedy trial court errors in order to preserve the claim that the ruling deprived him or her of a fair trial. *See id.* The Court in *Ross* found that the defendant received all that Oklahoma law allowed when he was forced to use a peremptory challenge to remedy the trial court's erroneous failure to remove the juror for cause. Therefore, the defendant in *Ross* was not denied his due process right under the Fourteenth Amendment to the United States Constitution.

■

¶ 17.   Wisconsin Statutes do not suggest that a defendant should be required to use a peremptory challenge against a juror who should have been removed for cause; neither does Wisconsin case law. In fact, this court found exactly the opposite in *State v. Gesch*, 167 Wis. 2d 660, 482 N.W.2d 99 (1992). In *Gesch*, we held that prospective jurors who are related to a state witness by blood or marriage in the third degree must be struck from the jury panel on the basis of implied bias. This court rejected the State's argument in *Gesch* that the failure to exercise a peremptory challenge to the questionable juror resulted in a waiver of the defendant's right to raise the issue of whether the juror should have been struck for cause. *Id.* at 671. The court declined to require that a defendant use a peremptory challenge to correct the errors of the trial court, noting that "[t]he peremptory challenge is one of the most important of the rights secured to the accused." *Id.*

19

¶ 18.   While the analysis provided by the Court in *Ross* is applicable in the case at bar, the ultimate result in *Ross* does not dictate the ultimate result in this case because, as demonstrated, Oklahoma law and Wisconsin law differ regarding the use of peremptory challenges. Oklahoma law requires a party to use peremptory challenges to correct trial court errors; Wisconsin law does not.

¶ 19.   As demonstrated by the decision in *Ross*, there is a clear distinction between the right to a fair and impartial jury as found in the Sixth Amendment to the United States Constitution and the right to due process of law as defined by state law or by statute. *See Ross*, 487 U.S. at 89. Unlike the defendant in *Ross*, Ramos makes no claims that his constitutional right to a fair and impartial jury has been violated.[3] In fact, the right to peremptory challenges has no basis in the Constitution. *See id.* at 88. Several cases, both federal and state, rely on this distinction in analyzing whether a defendant's rights have been violated.

¶ 20.   The Seventh Circuit Court opinion in *United States v. Beasley*, 48 F.3d 262 (7th Cir. 1995) is instructive on the issue. *Beasley* involved a Sixth Amendment challenge by a defendant who claimed that a trial court's failure to strike for cause a juror whose brother was a police chief and whose son was a police officer violated the defendant's right to an impartial jury. Although the court rejected the defendant's

---

[3] Because the juror who was challenged for cause was eventually struck from the panel, Ramos concedes that the impaneled jury was impartial. Therefore, he further concedes, Article I, section 7 of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution have not been violated.

constitutional argument, it made the following obser-vation:

> Beasley [the defendant] could have made another argument. Although peremptory challenges are not of a constitutional dimension, *see Ross*, 487 U.S. at 88, 108 S.Ct. at 2278, it could be argued that the designation of ten peremptory challenges under Fed.R.Crim.P. 24 is a matter of federal law. A district court error, hence, in refusing to strike a juror for cause would deprive the defendant of a federally granted peremptory challenge. . . .However, Beasley does not make this argument.

*Id.* at 268, note 5.[4] While the defendant in *Beasley* did not make a statutory claim, the argument described by the court therein is precisely that made by Ramos in the instant case. We embrace this argument.

¶ 21. Several other states have adopted this approach and held that reversal is required when a trial court erroneously refuses to dismiss a juror for cause, even if the challenged juror does not participate in the final decision. *See, e.g., People v. Prator*, 856 P.2d 837 (Colo. 1993); *Thomas v. Commonwealth*, 864 S.W.2d 252 (Ky. 1993), *cert. denied*, 510 U.S. 1177 (1994); *State v. Cross*, 658 So. 2d 683 (La. 1995); *State v. Phillips*, 461 S.E.2d 75 (W.Va. 1995); *State v. Bingham*, 859 P.2d 769 (Ariz. Ct. App. 1993). Because Kentucky law and Wisconsin law are similar with

---

[4] The Third Circuit opinion in *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995) also demonstrates the difference between an analysis focused on the Sixth Amendment versus an analysis based on a party's right to due process of law as defined by statute. The *Kirk* court held a "showing of prejudice is not required to reverse a verdict after demonstrating that a statuto-rily-mandated, peremptory challenge was impaired." *Id.* at 160.

respect to peremptory challenges,[5] we look to the Kentucky Supreme Court case of *Thomas v. Commonwealth* for instruction.

¶ 22.    Like Wisconsin law as established in *Gesch*, Kentucky law does not require that a defendant use his or her peremptory challenges on jurors who should have been excused for cause. *See Thomas*, 864 S.W.2d at 259. In *Thomas*, the court held, in relevant part, that the failure to sustain challenges for cause deprived the defendant of his peremptory challenges. Therefore, his conviction had to be overturned regardless of whether any juror proved to be disqualified on voir dire actually sat on the panel. The court explained its holding in the following manner:

> The object of voir dire is to start the trial on a level playing field; it is not a level playing field if there are jurors on the panel who are predisposed to decide one way or the other. A defendant has been denied the number of peremptory challenges procedurally allotted to him when forced to use peremptory challenges on jurors who should have been excused for cause.

*Id.* Finally, the court notes that "[t]he rules specifying the number of peremptory challenges are not mere technicalities, they are substantial rights and are to be fully enforced." *Id.*

---

[5] The Kentucky statute at issue in *Thomas v. Commonwealth*, 864 S.W.2d 252 (Ky. 1993), provides in pertinent part that "[i]f the offense charged is a felony. . .the defendant [is entitled to] eight (8) peremptory challenges," and if "additional jurors [alternates] are called, the number of peremptory challenges allowed each side and each defendant shall be increased by one (1)." *Id.* at 258–59.

¶ 23.  Much like the Kentucky Supreme Court, this court has opined that if a defendant is deprived of the right to exercise the full complement of his or her peremptory challenges, the defendant is entitled to a new trial. *See State v. Wyss*, 124 Wis. 2d 681, 724, 370 N.W.2d 745 (1985) ("[t]here is little doubt that if the trial court or the prosecution had deprived [the defendant] of his right to the effective exercise of his peremptory challenges it would have provided grounds for a new trial"), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 505–06, 451 N.W.2d 752 (1990). In the instant case, only the state received that to which it was entitled under state law. Ramos was denied his right to exercise all of the peremptory challenges to which he was entitled as a result of the trial court's error. The juror in this case clearly indicated to everyone in the courtroom that she could not be fair to the appellant. Yet, the juror remained on the jury panel (until the defendant used a peremptory challenge to strike her) only because the trial court was steadfast and arbitrary in its refusal to take the seconds necessary to have the court reporter read back the juror's statement.

¶ 24.  The State relies on several cases in support of its proposition that the erroneous exercise of the trial court in refusing to strike the challenged juror for cause resulted in nothing more than a harmless error. Relying on *Carthaus v. State*, 78 Wis. 560, 47 N.W. 629 (1891) and other 19th Century cases, the State asserts that nothing else matters if the defendant received a trial by a fair and impartial jury. Without any analysis, this court in the *Carthaus* case quipped: "A fair and impartial jury was impaneled, and what more could the defendants ask for?" *Id.* at 568.

¶ 25. If Ramos were making a claim that his Sixth Amendment right to a fair and impartial jury had been violated, then *Carthaus* would control. However, the *Carthaus* court did not address the underlying statute at issue and came to no decision as to whether the defendants' statutory rights were violated, presumably because no such argument was presented by the parties. As previously demonstrated, the issue in this case is not whether a fair and impartial jury was impaneled, but whether Ramos' statutory rights were violated. Therefore, we find that *Carthaus* is not controlling here.

¶ 26. The State also relies on the Wisconsin Court of Appeals' case of *State v. Traylor*, 170 Wis. 2d 393, 489 N.W.2d 626 (Ct. App. 1992). In *Traylor*, the court held that where a fair and impartial jury was impaneled, the defendant could not complain that his trial counsel was ineffective for failing to move to have the juror removed for cause. The *Traylor* court relied on two cases from the 19th Century which reasoned that a defendant's right to a fair trial and impartial jury was not violated unless a biased juror actually served on the jury. For the same reason that we find that *Carthaus* is not controlling, we also distinguish *Traylor*.

¶ 27. In the case at bar, even if a fair and impartial jury was impaneled, the trial court's failure to dismiss the challenged juror for cause effectively deprived Ramos of the right to exercise all seven of his statutorily granted peremptory challenges. Although it is a shame to have a new trial in this tragic first-degree murder case when a fair and impartial jury made the final decision, the error by the trial court requires that the defendant receive a new trial. We hold that the use

24

of a peremptory challenge to correct a trial court error is adequate grounds for reversal because it arbitrarily deprives the defendant of a statutorily granted right. Therefore, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 28. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I join the majority opinion. I write separately to add some further considerations supporting the rule announced today, which I believe is both correct as a rule of law and necessary to implement the public policy underlying the statutes.

¶ 29. All members of the court agree on the following principles: The defendant does not claim that his Sixth Amendment right to an impartial jury was violated. Rather, he claims that the circuit court violated his statutory rights (and accordingly his procedural due process rights) by denying him the effective exercise of all seven peremptory challenges guaranteed him by Wis. Stat. § 972.03 (1995–96). *Ross v. Oklahoma*, 487 U.S. 81 (1988), frames our inquiry. Under *Ross* a criminal defendant is not entitled to a new trial if state law requires the defendant to exercise a peremptory challenge when the trial court errs in refusing to remove a challenged juror for cause. In Wisconsin, a criminal defendant need not exercise a peremptory challenge to a juror who should have been dismissed for cause; the criminal defendant does not waive the objection to the juror by failing to use a peremptory challenge. *State v. Gesch*, 167 Wis. 2d 660, 671, 482 N.W.2d 99 (1992).

¶ 30. The members of the court disagree about the nature of the Wisconsin statutory right to peremptory challenges.

¶ 31. The majority opinion holds that a criminal defendant in Wisconsin is entitled to his full complement of peremptory challenges; if he uses a peremptory challenge to strike a juror who should have been struck for cause, as he requested, the conviction will be reversed.[1] The majority concludes that reversal is the only feasible way to vindicate a party's right to peremptory challenges when that right is impinged by the circuit court's erroneous denial of a challenge for cause.

¶ 32. The dissenting opinion contends that the purpose of peremptory challenges is to impanel an impartial jury. According to the dissenting opinion, a defendant cannot be heard to complain if he uses some or all of his peremptory challenges to correct the circuit court which has erroneously refused, on request of the plaintiff, to strike jurors who should as a matter of law be struck for cause.[2] The rule proposed by the dissenting opinion would ill serve the purposes of both peremptory and for-cause challenges and would fail to give effect to the statutory provisions mandating challenges for cause and peremptory challenges.

---

[1] The use of peremptory challenges that violates the Equal Protection Clause is not at issue in this case.

[2] The State concedes that situations might arise which warrant reversal in connection with the use of peremptory challenges. For example, according to the State, prejudicial error might occur when the trial judge repeatedly and deliberately misapplies the law to force the defendant to use his peremptory challenges or when the circuit court makes good faith errors forcing the defendant to use most or all of his peremptory challenges to correct the errors. Brief for State at 20.

¶ 33. I believe the majority opinion accurately describes the nature of the statutory right to peremptory challenges; I find no convincing indication that the statutory right to peremptory challenges is limited in the manner the dissenting opinion suggests.

¶ 34. Wisconsin's relevant statutes are written in unconditional and mandatory terms. "If a juror is not indifferent in the case, the juror shall be excused." Wis. Stat. § 805.08(1) (applicable to criminal trials by virtue of Wis. Stat. § 972.01). "[T]he defendant is entitled to 6 peremptory challenges." Wis. Stat. § 972.03.[3] By providing for both peremptory challenges and challenges for cause, the legislature can be presumed to have intended the two types of challenges to serve distinct purposes.

¶ 35. The dissenting opinion views the purposes of peremptory challenges and challenges for cause to be the same, namely to impanel an impartial jury. Accordingly the dissenting opinion would allow peremptory challenges to correct trial court errors with regard to challenges for cause and would test prejudice to the defendant solely by asking whether the jury was impartial. The two types of challenges serve different purposes and it is reasonable to conclude that the legislature intended these distinct purposes to be given effect.

¶ 36. Challenges for cause are intended to remove prospective jurors "on a narrowly specified, provable, and legally cognizable basis of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79

---

[3] Because alternate jurors were called in this case the defendant was entitled to an additional peremptory challenge as provided by Wis. Stat. § 972.03.

(1986). The ancient right[4] to peremptory challenges serves less discrete purposes; the right "permits rejection for a real or imagined partiality that is less easily designated or demonstrable." *Id.* As the name suggests, the right is peremptory; no reason need be had or given.[5]

¶ 37. Blackstone provided two grounds for the right to peremptory challenges: to involve defendants intimately in the selection of their jurors and to remove any disincentive to thorough voir dire. Blackstone set forth the two purposes as follows:

> 1. As every one must be sensible what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is, that a prisoner, (when put to defend his life,) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike; 2. Because upon challenges for cause shown, if the reasons assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.

[4] Chief Justice Burger traced the right of peremptory challenge from the Roman era through the English Middle Ages to the early American republic in *Batson v. Kentucky*, 476 U.S. 79, 118–20 (1986) (Burger, C.J., dissenting).

[5] The United States Supreme Court has described the right of peremptory challenge as "one of the most important of the rights secured to the accused." *Pointer v. United States*, 151 U.S. 396, 408 (1894).

4 *Blackstone's Commentaries* 353, *quoted in People v. Bodine*, 1 Denio 281, 310 (N.Y. Sup. Ct. 1845) (holding that a court "certainly would not be allowed to disregard a challenge for cause, and turn the party making it over to his peremptory challenges").[6]

¶ 38.  The harmless error analysis urged by the dissent would fail to serve the purposes of the statutes. The defendant in the present case cannot show the effect of the judge's error on the verdict; he has shown, however, that he had to expend a peremptory challenge to remove a juror who was required to be removed for cause. If the statutory right to peremptory challenge is to be meaningful, the parties must be able to exercise their challenges independent of the circuit court's striking for cause. "[B]urdening the parties with a supervisory duty over the trial court when it errs in denying a challenge for cause. . .eviscerates the substance of challenges for cause *as well as* peremptory challenges." *State v. Huerta*, 855 P.2d 776, 780 (Ariz. 1993).

¶ 39.  Our determination of legislative intent in this case is guided also by the principle that circuit courts must be encouraged to assiduously guard a defendant's right to an impartial jury. The court has admonished circuit courts that "because it preserves the appearance as well as the reality of an impartial trial," circuit courts should err on the side of dismissing a challenged juror when the challenged juror's pres-

---

[6] For recent discussions of the respective purposes of peremptory and for-cause challenges see *United States v. Annigoni*, 96 F.3d 1132, 1136–39 (9th Cir. 1996) (en banc) (holding that erroneous denial of peremptory challenge requires automatic reversal of conviction); Nancy S. Marder, *Beyond Gender: Peremptory Challenges and the Role of the Jury*, 73 Tex. L. Rev. 1041 (1995).

ence may create bias or an appearance of bias, even when an appellate court would not reverse the circuit court's decision to allow the juror to sit. *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956). A restrictive view of the purposes of peremptory challenges would provide the opposite incentive to the circuit courts.

¶ 40. The majority opinion properly concludes that peremptory challenges are not substitutes for challenges for cause. In this case the defendant was forced to surrender his statutory right to a peremptory challenge to preserve his constitutional right to an impartial jury. Because the defendant was denied a substantial right guaranteed by statute, his conviction must be reversed.

¶ 41. For the reasons set forth, I write separately.

¶ 42. I am authorized to state that Justice Janine P. Geske joins this opinion.

¶ 43. N. PATRICK CROOKS, J. (*dissenting*). I dissent because I conclude that the circuit court did not deprive Edward Ramos of his right to the effective exercise of a peremptory challenge under Wisconsin law. Instead, I conclude that by using a peremptory challenge to strike a juror who should have been excused for cause, Ramos effectively exercised this challenge for the purpose it is intended—to impanel an impartial jury. Further, I conclude that Ramos is not entitled to automatic reversal of his conviction because it is well established that, in cases like this, the defendant is not entitled to a new trial unless a biased juror actually sat on the jury. Consequently, I conclude that Ramos' challenge under the Fourteenth Amendment to the United States Constitution must fail because he

was not deprived of any right to which he was entitled under Wisconsin law. Thus, although I agree that the circuit court erroneously exercised its discretion when it failed to excuse the juror for cause, I conclude that this error was harmless.

## A.

¶ 44.   Ramos concedes that an impartial jury was impaneled in this case. *See* majority op. at 20, n.3. Accordingly, Ramos does not claim that his right to an impartial jury under the Sixth Amendment was violated. Rather, Ramos claims that his right to due process under the Fourteenth Amendment was violated because the circuit court, by failing to excuse the juror for cause, effectively deprived Ramos of a statutorily-provided peremptory challenge.

¶ 45.   The United States Supreme Court considered an analogous Fourteenth Amendment challenge in *Ross v. Oklahoma*, 487 U.S. 81 (1988).[1] The Court indicated: "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* at 89 (internal citations omitted). Accordingly, the Court determined that a defendant's right to due process is violated "only if the defendant does not receive that

---

[1] The *Ross* Court also considered whether the defendant's Sixth Amendment right to an impartial jury had been violated. The Court held: "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). However, since Ramos is not making a Sixth Amendment challenge, this portion of the *Ross* opinion is not controlling.

which state law provides." *Id.* Applying Oklahoma law, the *Ross* Court concluded that the petitioner was required to exercise his peremptory challenge to remove the juror, and that the trial court's error constituted "grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him." *Id.* Since a biased juror was not forced upon the petitioner, the Court held that Ross has received all that Oklahoma law allowed him, and therefore his Fourteenth Amendment challenge failed. *Id.* at 89–91.

### B.

¶ 46.   Accordingly, this court must determine whether Ramos received all that Wisconsin law allowed him in order to decide whether his Fourteenth Amendment right to due process has been violated. *See id.* at 89. As indicated by the majority, *see* majority op. at 16–17, Ramos clearly was entitled to the effective exercise of seven peremptory challenges. *See* Wis. Stats. §§ 972.03 & 972.04(1); *State v. Wyss*, 124 Wis. 2d 681, 724, 370 N.W.2d 745 (1985) (indicating that a defendant has a "right to the effective exercise of his peremptory challenges"), *overruled on other grounds, State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). However, the Wisconsin Statutes do not indicate in what manner these peremptory challenges may be used. Consequently, in order to determine whether Ramos "effectively" exercised all of his peremptory challenges, and thereby received that to which he was entitled, this court must look to Wisconsin precedent. *See Ross*, 487 U.S. at 89 (court looked to Oklahoma precedent to determine whether defendant received that which state law provided).

¶ 47. The majority essentially concludes that, under Wisconsin law, if a defendant uses a peremptory challenge to strike a "for cause" juror, the defendant is thereby deprived of the effective exercise of that challenge because he or she did not use it to strike a juror for "no cause," i.e., based on a hunch or intuition.[2] In other words, the majority holds that a defendant "effectively" exercises his or her full complement of peremptory challenges only if he or she uses every challenge to strike a juror for "no cause." Accordingly, the majority concludes that it is irrelevant that an impartial jury was impaneled in this case; all that matters is that Ramos used one of his peremptory challenges to strike a "for cause" juror, and therefore did not use it to strike a "no cause" juror.

¶ 48. After carefully reviewing Wisconsin precedent, as well as federal case law, I reach the opposite conclusion. It is well settled that peremptory challenges are "but one state-created means to the constitutional end of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57 (1992); *accord Ross*, 487 U.S. at 88. Therefore, peremptory challenges are not intended to enable the state or the defendant to select particular jurors who they think may be more favorable to their side; rather, peremptory challenges are intended to be a means to the end of ensuring the selection of an unbiased jury.[3] *See McCollum*, 505 U.S.

---

[2] However, the majority presumably would agree that a defendant has no right to exercise a peremptory challenge to strike a juror based on race, *see Batson v. Kentucky*, 476 U.S. 79 (1986), or gender, *see J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994).

[3] As the Supreme Court of Tennessee has indicated: "As important as the. . .proper exercise of peremptory challenges undoubtedly are, these procedures are designed to insure the

at 57; *Ross*, 487 U.S. at 88. Consistent with this purpose, Wisconsin courts have determined that a defendant is not deprived of the right to the effective exercise of a peremptory challenge simply because the defendant uses a challenge to strike a juror who should have been removed for cause.

¶ 49. Specifically, in *Carthaus v. State*, 78 Wis. 560, 47 N.W. 629 (1891), the defendants argued that they were entitled to reversal of the circuit court's judgment of conviction because they "were compelled, as shown by the record, to exercise their eighth **and last peremptory challenge**" to strike a juror that should have been struck for cause. Defendants' brief in *Carthaus* at 10 (emphasis original). Therefore, the defendants in *Carthaus* made the same argument that Ramos makes in this case: they claimed that because of the circuit court's error, they "were obliged to challenge [the juror] and **thus lost one strike**." State's brief in *Carthaus* at 30 (emphasis added). This court disagreed, concluding:

> As to the objection to the juror. . .we think it has no merit. He was peremptorily challenged by the defendants, and set aside. It is said the defendants should not have been put to their peremptory challenges as to this juror . . ., because in so doing they exhausted their peremptory challenges; but it does not appear that they were prejudiced in any way by that fact. A fair and impartial jury was impaneled, and what more could the defendants ask for?

78 Wis. at 508. Therefore, this court held that where a defendant uses a peremptory challenge to strike a "for

---

selection of a fair and impartial jury, not to enable the accused himself to select particular jurors." *State v. Simon*, 635 S.W.2d 498, 507–08 (Tenn.), *cert. denied*, 459 U.S. 1055 (1982).

cause" juror, and no prejudice thereby results to the defendant, the defendant has received all that Wisconsin law provides. *See id.*

¶ 50.   Similarly, in *Pool v. Milwaukee Mechanics' Ins. Co.*, 94 Wis. 447, 69 N.W. 65 (1896), this court held that where a circuit court errs in overruling a challenge of a juror for cause, a defendant is not entitled to a new trial "unless it is shown that an objectionable juror was forced upon the party, and sat upon the case after such party had exhausted his peremptory challenges." *Id.* at 453. Likewise, in *Bergman v. Hendrickson*, 106 Wis. 434, 82 N.W.304 (1900), this court concluded that a defendant is not entitled to reversal where a circuit court refuses to discharge a juror for cause unless prejudice results to the defendant. *Id.* at 438–39.

¶ 51.   More recently, in *State v. Traylor*, 170 Wis. 2d 393, 489 N.W.2d 626 (Ct. App.) *review denied*, 491 N.W.2d 768 (Wis. 1992), the defendant contended that his counsel was ineffective because she used peremptory challenges to strike certain jurors rather than moving the court to excuse the jurors for cause. *Id.* at 395–96. The court of appeals, relying on *Carthaus* and *Pool*, concluded: "Wisconsin's longstanding rule is that where a fair and impartial jury is impaneled, there is no basis for concluding that a defendant was wrongly required to use peremptory challenges." *Id.* at 400. Furthermore, the court determined that unless a defendant can show that "the exhaustion of peremptory challenges left him with a jury that included an objectionable or incompetent member," the defendant is not entitled to reversal of his or her conviction under Wisconsin law. *Id.*

¶ 52.   *Carthaus, Pool, Bergman,* and *Traylor* establish that, under Wisconsin law, "effective" exercise of a peremptory challenge does not mean that the

defendant must use every peremptory challenge to strike a juror for "no cause." Instead, these cases demonstrate that where a defendant uses a peremptory challenge to strike a "for cause" juror, the defendant has effectively exercised the challenge for the purpose it is intended—to impanel an impartial jury. Further, these cases clearly establish that, under Wisconsin law, a defendant is not entitled to a new trial unless he or she can make some showing of prejudice.[4]

¶ 53. The majority dismisses *Carthaus, Pool, Bergman*, and *Traylor* because it concludes that these cases are relevant only when a defendant makes a Sixth Amendment challenge, since the courts in these cases focused on whether an impartial jury had been impaneled. However, the majority wrongly assumes that when a defendant makes a Fourteenth Amendment claim based on state law, it is always irrelevant whether an unbiased jury was impaneled. *Ross* establishes that the essential inquiry in a Fourteenth Amendment case of this type is whether the defendant received all that he or she was entitled under state law. 487 U.S. at 89. Therefore, in such a case, if a defendant

---

[4] Accordingly, a defendant is afforded no more protections under Wisconsin law than are provided by the Sixth Amendment. *See Ross*, 487 U.S. at 88 (holding that, where a defendant uses a peremptory challenge to strike a "for cause" juror, the Sixth Amendment is not violated so long as the jury was impartial).

Furthermore, I conclude that Wisconsin law is similar to Oklahoma law, in that both establish that where a trial court erroneously refuses to remove a juror for cause, such an error provides grounds for reversal "only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him." *See id.* at 89 (describing Oklahoma law). Therefore, I also conclude that Wisconsin law is not similar to Kentucky law. *See* majority op. at 22–23 (describing Kentucky law).

is not entitled to a new trial under the applicable state law unless a biased juror sat on the jury, then it is highly relevant that an impartial jury was impaneled. *See id.* at 89–91 (in deciding petitioner's Fourteenth Amendment claim, court considered it relevant that under Oklahoma law, a defendant is entitled to a new trial "only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him.").

¶ 54.  Moreover, contrary to the majority's conclusion that *Carthaus, Pool,* and *Bergman* are limited to an articulation of the Sixth Amendment right to an impartial jury, these three cases dealt solely with the right to peremptory challenges under Wisconsin law. This is so because the U.S. Supreme Court did not even determine that the Sixth Amendment right to an impartial jury was applicable to the states until 1966. *See Parker v. Gladden,* 385 U.S. 363, 364 (1966).[5] Indeed, the briefs as well as the opinions in these cases are bereft of any citation to the state or federal constitutions. It is therefore clear that this court in *Carthaus, Pool,* and *Bergman* considered the very issue that we face today: to what was the defendant entitled under Wisconsin law? Thus, I conclude that *Carthaus, Pool, Bergman,* as well as *Traylor,* are controlling here.

¶ 55.  Further, I do not agree that *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992), is applicable in this case. In *Gesch,* the defendant argued that his right to an impartial jury was violated because the circuit court failed to excuse a juror who was related by blood

---

[5] A few years earlier, the Supreme Court determined that the Sixth Amendment right to counsel, *see Gideon v. Wainwright,* 372 U.S. 335 (1963), and right to confrontation, *see Pointer v. Texas,* 380 U.S. 400 (1965), were applicable to the states through the Fourteenth Amendment.

to a state witness. *Id.* at 662–65. Unlike the present case, in *Gesch* the defendant did not exercise a peremptory challenge to strike the "for cause" juror; therefore, he sat on the jury. *Id.* at 671. The State argued that because the defendant had not exercised a peremptory challenge, he had waived his right to raise the circuit court's error on appeal. *Id.* The court concluded that the defendant had not waived this issue, and further held that his right to an impartial jury had been violated. *Id.*

¶ 56. However, the *Gesch* court did not determine whether the defendant's right to the effective exercise of a peremptory challenge would have been violated had he used a peremptory challenge to strike the juror, because this was not the issue before the court. Moreover, the court apparently agreed with the State that if the defendant had struck the juror and subsequently been convicted, the circuit court's refusal to excuse the juror would have been harmless error. *See id.* at 671. Finally, since the defendant in *Gesch* claimed that his right to an impartial jury had been violated, *see id.* at 665–66, pursuant to the majority's own reasoning, *Gesch* is inapposite in this case. *See* majority op. at 23–24 (arguing that *Carthaus* involved the right to an impartial jury and therefore is distinguishable).

¶ 57. Today's decision effectively overrules *Carthaus, Pool, Bergman,* and *Traylor,* and marks a departure from this court's commitment to upholding controlling precedent. This court's covenant of faithfulness to the doctrine of *stare decisis* cannot be overemphasized, for it underpins the very legitimacy of the judiciary. Fidelity to precedent helps to ensure that the existing law will not be abandoned without strong justification. *See State v. Stevens,* 181 Wis. 2d 410,

441–42, 511 N.W.2d 591 (Abrahamson, J., concurring), *cert. denied*, — U.S. —, 115 S. Ct. 2245 (1995). The principle underlying *Carthaus, Pool, Bergman,* and *Traylor* applies as vigorously today as it did when those cases were decided. Therefore, there is no justification for overruling these cases. As such, I conclude that Ramos received all that Wisconsin law provides. Consequently, his Fourteenth Amendment challenge fails. Accordingly, I conclude that although the circuit court erroneously exercised its discretion in this case by failing to excuse the challenged juror for cause, such error was harmless. It did not deprive Ramos of any right to which he was entitled under Wisconsin law.[6] Thus, I would reverse the decision of the court of appeals.

¶ 58. In closing, I emphasize that the majority has effectively created a "win-win" situation for defendants. Pursuant to *Gesch*, if a circuit court erroneously fails to excuse a juror for cause, the defendant may refuse to exercise a peremptory challenge, wait until the jury renders its verdict, appeal if he or she does not like the result, and then receive a new trial. Pursuant to the majority's decision in this case, even if a defendant uses a peremptory challenge to strike the "for cause" juror in such situations, the defendant may wait until the jury renders its verdict, appeal if he or she

---

[6] Wis. Stat. § 805.18 provides that an error is harmless if it does not effect the substantial rights of the party seeking reversal of the judgment. Although § 805.18 is part of the Wisconsin Rules of Civil Procedure, this court has determined it is applicable in criminal cases pursuant to Wis. Stat. § 972.11(1). *See State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985). Thus, because Ramos received all to which he was entitled under Wisconsin law, and therefore his substantial rights were not violated, I conclude that the circuit court's error was harmless.

does not like the result, and then receive a new trial. Therefore, *Gesch*, combined with the majority's opinion today, will result in a tremendous waste of judicial resources and taxpayers' money—in this case and in future cases as well.

¶ 59.   For all of these reasons, I respectfully dissent.

¶ 60.   I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.