**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark E. BEASLEY, Defendant–Appellant.**

**No. 94–2586.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1994.

Decided Feb. 17, 1995.

---

John Vaudreuil (argued), Larry Wszalek, Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

Mark A. Eisenberg, Madison, WI (argued), for defendant-appellant.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

In May 1994, a federal jury convicted Mark E. Beasley of interstate transportation of a firearm with the intent to commit a bank robbery, in violation of 18 U.S.C. § 924(b). Beasley argues that he was denied his Sixth Amendment right to trial by an impartial jury. Specifically, Beasley contends that the district court judge should have allowed Beasley's challenge of a prospective juror, Kathleen Brogan, and excused her from jury duty for cause. Brogan had a connection to law enforcement: her son was a police officer, her brother was Chief of Police for the Town of Madison, and her husband was a dispatcher for the state police. However, Brogan gave no indication during voir dire that her connections would influence her impartiality in the case. Because of Brogan's answers and the wide discretion given trial judges during voir dire, we hold that the Sixth Amendment has not been violated in this case. Additionally, Beasley argues that the judge abused her discretion in not providing reasons for denying Beasley's motion to strike three prospective jurors for cause. We disagree and hold that the judge's reasons are apparent from the context of her questions and the prospective jurors' answers.

## I. Background

In December 1993, Federal Bureau of Investigation (FBI) agents tape-recorded telephone conversations between Beasley and a police informant, in which Beasley discussed his plan to rob an automated teller machine in the City of Madison, Wisconsin. Subsequently, Beasley was arrested. In Beasley's car, FBI agents found a semi-automatic pistol, body armor, disguises, police radio scanners, and other electronic equipment. The grand jury indicted Beasley for interstate transportation of a firearm with the intent to commit a bank robbery, in violation of 18 U.S.C. § 924(b).

The district court judge conducted voir dire of potential jurors for trial. Initially, Judge Crabb asked several questions addressed to the group of potential jurors. Then, the prospective jurors introduced themselves and the judge asked each of them specific questions. Also, upon Beasley's request, the judge asked additional questions of certain prospective jurors, including Brogan, the challenged juror who ultimately sat in the trial, to determine their impartiality. Beasley made a motion to strike three jurors

for cause in addition to his ten peremptory challenges, which Judge Crabb denied.

## A. Questions Asked of the Prospective Jury Group

After administering the oath, the district court judge asked the group of prospective jurors a series of questions. First, Judge Crabb asked whether any of the jurors had particularly strong feelings about firearms, belonged to any firearms-oriented organizations, or knew someone injured by a firearm. Several jurors responded and they were excused. None of the three challenged jurors responded in the affirmative.

Judge Crabb also asked whether the jury instructions, including the presumption of innocence, the burden of proof, and the defendant's right not to testify, would trouble any of the prospective jurors. None of the prospective jurors responded that it would.

After the prospective jurors introduced themselves, Judge Crabb asked whether any of them would be more or less likely to believe the testimony of a law enforcement officer over that of any other witnesses just because they were in law enforcement. None of the prospective jurors responded that they would.

Judge Crabb also asked whether the prospective jurors would accept her instructions on the law and sit with absolute fairness and impartiality. None of the challenged prospective jurors responded that they could not sit with impartiality.

As well as asking questions addressed to the group of potential jurors, the judge questioned each individual juror on certain matters. Kathleen Brogan was challenged and was subjected to questioning regarding her connection to law enforcement.

## B. Specific Questions Asked of Kathleen Brogan

The transcript of voir dire reveals that juror Brogan was individually questioned by the judge regarding her impartiality:

**Prospective Juror Brogan:** My name is Kathleen Brogan. I'm 51 years old. I'm married, I have five grown children. I am a clerical support worker at MATC. My husband is a dispatcher for the State Patrol.

**The Court:** And where do your children work? What kind of jobs do they do?

**Prospective Juror Brogan:** My oldest son is a sergeant with the Dane County Sheriff's Department. My second son is a printer. My third son is a chef. My fourth son is a graduate student. And my youngest son is an agent in the United States Air Force.

**The Court:** Would the fact that your son is with the sheriff's department make it difficult for you to be impartial in a criminal case?

**Prospective Juror Brogan:** I don't think so.

(Tr. Vol. 9 at 1–A–27).

Later, the court asked whether any of the prospective jurors, their relatives, or close friends, had worked for the local, county, state, or federal government. (Tr. Vol. 9 at 1–A–52). A number of prospective jurors responded yes, including Brogan:

**The Court:** Ms. Brogan.

**Prospective Juror Brogan:** I have a daughter-in-law who is a sergeant at the University Police Department, and I also have a brother who works as the Town of Madison Police Chief.

**The Court:** And would that affect your ability to be fair?

**Mr. Eisenberg:** I'm sorry I couldn't hear who was the police chief.

**Prospective Juror Brogan:** My brother.

**The Court:** Is the police chief, or works for them?

**Prospective Juror Brogan:** Is the police chief.

**The Court:** Of the Town of Madison?

**Prospective Juror Brogan:** Yes.[1]

**The Court:** Okay. Mr. Timm....

(Tr. Vol. 9 at 1–A–52).

During a bench conference, Beasley requested further questioning of certain pro-

---

1. The Town of Madison is a suburb of the City of Madison, Wisconsin.

spective jurors, including Brogan, who he alleged had close connections with law enforcement.[2] Accordingly, the district court judge asked the following questions:

> **The Court:** Okay. I want to ask some follow-up questions to some of you who have close relationships with people who are police officers. And what I'm trying to get at is that when you're related to a police officer or see one frequently, sometimes you start talking shop, you talk about arrests, you talk about people who are investigated, are charged, are convicted; and I want to know whether in that process you talk about these people in a way that will make it difficult for you to give a fair trial to the defendant in this case.

(Tr. Vol. 9 at 1–A–70). The court continued:

> **The Court:** I guess what I am trying to get at is whether at some point you tend to generally put yourself in sort of the good guy's position as opposed to the bad guy's and you're out to get the bad guys. Sometimes that gets to be sort of a theme among law enforcement people; that they're sort of holding back the tide of crime and whatever. And that's somehow, or sometimes that's the way people like that talk.
>
> And it's one thing if you talk that way, and it's another thing if you can separate those kind of thoughts from your mind to think about this particular case and what happened here.
>
> Ms. Brogan, I think you have a brother who's a police chief and a son who's a police officer. Do you talk shop?
>
> **Prospective Juror Brogan:** Occasionally.

> **The Court:** And do you talk about—I mean not necessarily using those terms, but do you talk about bad guys and the problems that your brother and son have?
>
> **Prospective Juror Brogan:** We talk about the problems, but I like to think I have an open mind about things like this. And I form my own opinions.
>
> **The Court:** Okay. Mr. Timm. . . .

(Tr. Vol. 9 at 1–A–70, 71).

### C. Beasley's Response to Voir Dire

Beasley moved to strike three jurors for cause: Kathleen Brogan, Scott Timm, and William Levy.[3] The judge denied this motion. Beasley then exercised his ten peremptory challenges under Fed.R.Crim.P. 24. Included in the ten were Levy and Timm. Brogan was not included, and she ultimately sat on the jury that convicted Beasley. On appeal, Beasley states that he did not have enough peremptory challenges to strike Brogan, but would have if he could. Beasley argues that his conviction should be reversed under the Sixth Amendment because Brogan, who sat on the jury, should have been stricken for cause.

## II. Analysis

### A. Sixth Amendment Right to an Impartial Jury

The Sixth Amendment reads, in relevant part, that "the accused shall enjoy a right to a speedy and public trial by an impartial jury. . . ." U.S. Const. amend. VI. The Supreme Court interprets the Sixth Amendment to require that only those jurors who actually sat on the case be evaluated for impartiality.

*Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) analyzed the

---

**2.** In the bench conference, Mr. Eisenberg, Beasley's attorney, stated:

> Ms. Brogan's brother is Chief Brogan, I'm surmising, who is under all of the investigation right now. Her son is a police officer, and I would like to explore that a little bit, at least based on all these factors. I am assuming she has talked shop with her brother and her son before about allegations and her work and how that maybe they have talked about defendants in derogatory terms or people in derogatory terms and arrest or charges. And I think I

> would like to at least explore that issue or that avenue to see whether she could be fair and impartial. I hate to waste a strike on her, but I think that's one.

(Tr. Vol. 9 at 1–A–68).

**3.** Timm was a student of police science, his brother was a police officer, and he used to be the co-owner of a security company. Levy was a property manager who had previously witnessed a bank robbery and who had reported illegal activity in his building to the police.

Sixth Amendment's requirement of an impartial jury. In *Ross,* the state trial court should have dismissed a prospective juror for cause, but did not. The defendant exercised a peremptory challenge to remove the prospective juror. No other jurors were challenged. The Court held that the Sixth Amendment was satisfied because "[a]ny claim that the jury was not impartial ... must focus not [on the challenged juror who was removed by peremptory strike], but on the jurors who ultimately sat." *Id.* at 86, 108 S.Ct. at 2277. "[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Id.* at 88, 108 S.Ct. at 2278. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.*

Thus, in Beasley's case, the Sixth Amendment requires an examination of only those jurors who actually sat on the case. Beasley challenged three prospective jurors for cause, and the challenges were denied. Beasley exercised two of his ten peremptory challenges to remove two of the: challenged prospective jurors. Although Beasley had previously challenged prospective juror Brogan to be stricken for cause, he did not use any of his peremptory challenges to remove her. Obviously, Beasley's attorney felt that the other two prospective jurors, whom he previously asked be stricken for cause and were not, were fit to include in his peremptory challenges. Thus, he felt Brogan was not that unqualified for he had eight other opportunities to address peremptory challenges to her. Hence, only one challenged prospective juror, Brogan, actually sat on the case. Thus, only Brogan should be evaluated for impartiality under the Sixth Amendment. Beasley argues that Brogan should have been stricken because she has relatives in law enforcement and would naturally be more inclined to believe the testimony of law enforcement witnesses.

"The process of empaneling a jury is firmly entrusted to the sound discretion of the trial judge and will not be disturbed absent an abuse of this discretion." *United States v. Rubin,* 37 F.3d 49, 54 (2d Cir.1994).

Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.

*Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981).

"In reviewing denials of challenges for cause, we 'accord great deference to the judgment of the experienced trial judge based on his unique opportunity to assess the credibility of the jurors during voir dire, as well as their demeanor throughout the course of the trial.' " *United States v. Nururdin,* 8 F.3d 1187, 1190 (7th Cir.1993) (quoting *United States v. Barnes,* 909 F.2d 1059, 1070–71 (7th Cir.1990)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1328, 127 L.Ed.2d 676 (1994).

The district court may exclude any person summoned for jury service "on the ground that such person may be unable to render impartial jury service...." 28 U.S.C. § 1866(c)(2). Beasley argues that because Brogan has relatives involved in law enforcement, she is more inclined to believe testimony of law enforcement witnesses, and, hence, she would not be impartial. Thus, the presence of Brogan on the jury, Beasley contends, violates the Sixth Amendment requirement of an impartial jury, and therefore she should have been stricken for cause.

In a recent case, this court noted that "[w]e think a trial judge has discretion to find that a juror's mere relationship to a law enforcement officer is insufficient to strike for cause." *Nururdin,* 8 F.3d at 1190 (holding that district court's refusal to strike four jurors was not error because the jurors were removed by peremptory challenge and, thus, did not sit on the jury). In *United States v. Bryant,* 991 F.2d 171 (5th Cir.1993), the Fifth Circuit reviewed a district court's decision not to strike two jurors, both of whom had close connections to law enforcement, for cause. One prospective juror's husband was

a police chief, and the other prospective juror used to be a sheriff's deputy. The *Bryant* court held that it was not an abuse of discretion to refuse to strike the two prospective jurors because the district court judge had specifically asked each of them whether their connections to law enforcement would influence their ability to be fair and impartial. Both prospective jurors replied that they would be impartial, the district court accepted this response, and the Fifth Circuit found no reversible error.

Similarly, in Beasley's case, the district court specifically asked whether Brogan's connection to law enforcement would influence her evaluation of the testimony. Brogan answered that it would not. Also, the district court had asked questions of the group to determine if any of them could not be impartial in this case. Brogan made no response that indicated that she could not be fair and impartial. "Absent any reason to suspect that these responses were untrue, we must credit them; 'surely one who is trying as an honest man [or woman] to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.'" *United States v. York*, 933 F.2d 1343, 1367 (7th Cir.) (quoting *Dennis v. United States*, 339 U.S. 162, 171, 70 S.Ct. 519, 523, 94 L.Ed. 734 (1950)) (alteration in original), *cert. denied*, 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991).

Beasley argues that his situation resembles *United States v. Amerson*, 938 F.2d 116 (8th Cir.1991). In that case, the court held that: "[f]aced with a clear showing of actual partiality for police testimony on the part of the challenged jurors, the district court abused its discretion by refusing to excuse those jurors for cause." *Id.* at 118. However, in *Amerson*, the challenged jurors admitted that they were more inclined to believe police testimony rather than the testimony of other witnesses. Also, the case turned on

the credibility of police witnesses versus the credibility of the defense witnesses.

In Beasley's case, neither of these situations exist. First, Brogan gave no indication that she would be more inclined to believe the testimony of law enforcement witnesses. To the contrary, she responded that she would be impartial and keep an open mind. Second, Beasley's case did not turn on the credibility of law enforcement witnesses versus other witnesses. The evidence against Beasley was a series of tape-recorded phone conversations, from which the jury had to determine whether Beasley had the intent to commit a bank robbery.

Because Brogan answered Judge Crabb's questioning that she would not be influenced by her connections to law enforcement, we hold that the district court did not err in refusing to strike Brogan for cause.[4] Hence, we agree with the experienced trial judge's assessment and decision that the jury that sat on Beasley's case was impartial and did not offend the Sixth Amendment. However, because this was a federal trial, the voir dire conducted by the district court may require more than just constitutional review.

**B. Supervisory Review of Federal Voir Dire**

■ The Sixth Amendment provides the minimum protection for an impartial jury. However, in federal trials, voir dire may be subject to additional federal requirements. Beasley makes a single argument that may raise these additional requirements: the district court should have enunciated its reasons for denying Beasley's motion to strike three jurors for cause.

The Supreme Court has stated that "[o]ur cases dealing with the requirements of voir dire are of two kinds: those that were tried in federal courts, and are therefore subject to this Court's supervisory power, ... and those that were tried in state courts, with

4. Because Brogan, under oath, said she would not be influenced by her law enforcement connections, finding that the district court erred in not striking Brogan for cause might create a per se rule: that a prospective juror whose brother is a local chief of police is per se unqualified to sit on a federal criminal trial. "We consider such a per se rule to be at odds with the United States

Supreme Court's instructions on how to evaluate the qualifications of individuals for jury service." *Depree v. Thomas*, 946 F.2d 784, 788 n. 4 (11th Cir.1991) (jurors with law enforcement connections are not inherently unqualified to sit on jury for a state trial for the murder of a police officer).

respect to which our authority is limited to enforcing the commands of the United States Constitution." *Mu'Min v. Virginia,* 500 U.S. 415, 422, 111 S.Ct. 1899, 1903, 114 L.Ed.2d 493 (1991) (citations omitted). Consequently, "[w]e enjoy more latitude in setting standards for voir dire in federal courts under our supervisory power than we have in interpreting the provisions of the Fourteenth Amendment with respect to voir dire in state courts." *Id.* at 424, 111 S.Ct. at 1904. Beasley's case presents a situation that involves the federal law of voir dire.

Beasley argues that the district court abused its discretion in failing to enunciate its reasons for refusing to strike Brogan, Levy, or Timm for cause.[5] However, the transcript of the voir dire fails to support his theory and reveals the following pattern. The judge asked the group of prospective jurors several questions. Then, the prospective jurors introduced themselves and the judge asked each person specific questions about their background that might impact their impartiality. Several prospective jurors were excused at this stage. The judge specifically asked Brogan, Timm, and Levy about their connections to law enforcement.

Subsequently, Beasley expressed concern at a bench conference about the law enforcement connections of Brogan, Timm, and Levy. As quoted above in footnote 2, Beasley was concerned that these three prospective jurors would give more credence to testimony of law enforcement witnesses. Responding to this concern, the district judge questioned each challenged prospective juror further. Beasley then made his motion to strike for cause, which the judge denied.

The reasons for the denial seem apparent from the questions the judge asked of each prospective juror. Beasley expressed concern as to the impartiality of the three challenged prospective jurors. Responding to this concern, the judge questioned the three

challenged prospective jurors and all three responded that they would be impartial. It can be inferred that the reason the judge did not strike the three prospective jurors was because the judge was satisfied with their responses to her question of whether they could be impartial in this trial. We hold that the district court did not abuse its discretion in not enunciating reasons for the denial of Beasley's motion to strike prospective jurors Brogan, Levy, and Timm for cause.

### III. Conclusion

The Sixth Amendment requires an impartial jury. Beasley argues that his Sixth Amendment rights have been violated because the district court refused to strike a challenged prospective juror, Brogan, whose brother was a police chief and whose son was a police officer. However, refusals to strike for cause are subject to a deferential standard of review. In this case, Brogan, the challenged juror who ultimately sat on the jury that convicted Beasley, answered the district court's specific questions regarding how her connection with law enforcement would affect her impartiality. Brogan gave no indication, and Beasley has provided no evidence to the contrary, that she could not be impartial. Thus, it was not error for the district court to refuse to strike Brogan for cause. Also, it was not an abuse of discretion, as Beasley claims, for the district court not to enunciate its reasons for refusing to strike the three challenged prospective jurors because the judge's reasons can be inferred from her questioning and the prospective jurors' responses. The judgment of the district court is AFFIRMED.

---

5. Beasley could have made another argument. Although peremptory challenges are not of a constitutional dimension, *see Ross,* 487 U.S. at 88, 108 S.Ct. at 2278, it could be argued that the designation of ten peremptory challenges under Fed.R.Crim.P. 24 is a matter of federal law. A district court error, hence, in refusing to strike a juror for cause would deprive the defendant of a

federally granted peremptory challenge. In the case at bar, if any of the three challenged prospective jurors had been stricken by the district court, Beasley would have preserved a peremptory challenge and could have used it to remove all challenged prospective jurors from the final jury. However, Beasley does not make this argument.