In the Matter of a **MEMBER OF the SPECIAL AUGUST 2006– 2 GRAND JURY.**

**No. 06 GJ 490.**

United States District Court, N.D. Illinois, Eastern Division.

June 20, 2007.

Patrick Fitzgerald, United States Attorney, Gary Shapiro, First Assistant, United

States Attorney's Office for the Northern District of Illinois, Chicago, IL.

### ORDER

HOLDERMAN, Chief Judge.

On May 30, 2007, the United States of America ("the Government"), through Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, filed a motion in this grand jury matter entitled "Government's Motion for Authorization to Conduct Limited Background Investigations of Grand Jury Member." The motion was heard and granted on that day by Acting Chief Judge Reuben Castillo. Pursuant to that May 30, 2007 order, information about the identified grand jury member ("Grand Juror") was thereafter obtained by the Government.

On June 7, 2007, the Government filed the pending motion entitled "Government's Motion for Authorization to Conduct Investigation of and to Excuse Grand Jury Member." To properly evaluate this pending motion, this court conducted a hearing and interviewed the Grand Juror in the presence of the Government counsel on June 7, 2007. For the reasons stated below, the court grants the Government's motion to conduct a further investigation to the limited extent defined in this order and as described by the court on the record at the June 7, 2007 hearing. The court denies the Government's motion to the extent that it seeks at this time to excuse the Grand Juror because there is insufficient evidence to warrant excusing the Grand Juror from further grand jury service on the Grand Jury.

### BACKGROUND

The court in this opinion is limiting the discussion of the factual background in accordance with the necessary confidentiality regarding grand jury matters and for the privacy of the Grand Juror.

On May 17, 2007, during the Government's presentation of evidence to the Special August 2006–2 Grand Jury ("Grand Jury") regarding a continuing investigation of what the Government believes to be illegal gang activity, a cooperating Government witness ("CW") appeared and testified before the Grand Jury. During the presentation of this testimony, two special agents of a federal law enforcement agency observed the Grand Juror[1] leave the Grand Jury's meeting room and return approximately 5 minutes later. Later, after one of the two special agents provided testimony about the investigation to the Grand Jury, the special agents, an Assistant United States Attorney ("AUSA"), and a translator observed the Grand Juror again leave the Grand Jury's meeting room. This time, the Grand Juror was observed placing a telephone call. It is unknown from the facts presented by the Government in its motion whether the Grand Juror used a public telephone or a cell phone to place the call.

After the CW and the special agent each concluded their testimony, the CW advised the two special agents and the AUSA that the Grand Juror who had left the Grand Jury's meeting room "looked like" a person believed by the CW to be a gang member possibly involved in the activities being investigated. The CW did not know the Grand Juror's name, but believed that, if the Grand Juror was the gang member, the CW recalled that the gang member had a specific nickname, which the CW stated. The CW went on to explain, according to the Government, that he had

---

1. The two federal special agents described the Grand Juror in question based on his physical appearance, race, ethnicity, gender and approximate age. That information was used to identify the Grand Juror. There is only one male member of the grand jury fitting the race/ethnic description, and the age of the Grand Juror matches the identified age.

first encountered the gang member, who the CW said "looked like" the Grand Juror, approximately four years ago in conduct related to the investigation. Estimating that he had seen the gang member, who "looked like" the Grand Juror, approximately 20 times over that four year period, the CW believed that the last time he saw the gang member was about one year ago.

After learning this information, the Government sought and obtained the May 30, 2007 court order by Acting Chief Judge Reuben Castillo that authorized the Clerk's Office to release to the Government the Grand Juror's personal "identifiers," such as his social security number, date of birth and telephone numbers, and permitted the Government to conduct what the Government characterized as a "passive" background investigation of the Grand Juror. The "passive" background investigation was limited to Government counsel's and special agents' reviewing law enforcement and public records databases. This method of investigation was designed not alert the Grand Juror that he was being investigated because the CW was not sure the Grand Juror was the gang member the CW recalled. The Government informed Judge Castillo that it would not conduct any additional investigation beyond that allowed by the May 30, 2007 order without a further order of the court.

The "passive" background investigation revealed that an individual with the same name and birth date as the Grand Juror had an entry in the Illinois Law Enforcement Agencies Date System ("LEADS"). The LEADS entry stated that the individual had been arrested for "mob action in a fight w/ rival gang," on a specific date 11 years ago, which was shortly before the Grand Juror's 17th birthday. The LEADS entry also included a notation about one gang-related tattoo on the individual's body. The gang identified in the

LEADS entry was the gang allegedly involved in the activities related to the investigation being presented by the Government to the Grand Jury. Due to the individual's juvenile status at the time of the arrest and the passage of time, the Government at this point was unable to locate additional records relating to that arrest. During the selection of the members of the Grand Jury, neither the Grand Juror nor any other potential Grand Jury member was asked about past gang ties, and the Grand Juror did not voluntarily disclose any such information.

Because the LEADS entry suggested confirmation of the Grand Juror's membership in the gang allegedly involved in the matter being investigated by the Grand Jury and provided possible corroboration for the CW's identification of the Grand Juror as a possible gang member, the Government requests in its pending motion that the court excuse the Grand Juror from the Grand Jury, either permanently or temporarily, while a further Government investigation takes place, and allow the Government to investigate the situation further. The Government seeks this relief to protect the confidentiality of the Grand Jury's process, to avoid potential conflicts of interest and the possible compromising of the Government's investigation.

After reading the Government's pending motion and hearing Government counsel's oral presentation at the June 7, 2007 hearing, the court requested to meet with the Grand Juror, so the court could ask him questions. Government counsel was invited to attend the court's questioning of the Grand Juror, and did so attend. Without apprising the Grand Juror of the nature of the pending issue, the court questioned the Grand Juror in the presence of Government counsel about any affiliation he may have had with a gang. In response to the

court's inquiries, the Grand Juror candidly admitted that he had a past association when he was in high school with the identified gang and that his affiliation with the gang had ended 11 years ago. The Grand Juror stated that when he was a teenager, for a period of about a year to two years, he was in the identified gang. The Grand Juror also stated in response to the Court's question that he did not have a nickname when he was with the gang.

The Grand Juror confirmed that, during the time he was affiliated with the gang, there had been an incident where a fight almost broke out among a group of individuals, including himself and others from his gang and members of a rival gang, at the shopping mall located in the Chicago suburb specifically identified in the LEADS entry. According to the Grand Juror, the mall's security guards present at the incident prevented any physical fight from occurring and released the Grand Juror. The Grand Juror stated that he was not physically taken into custody. As far as the Grand Juror understood, he was not criminally charged in connection with that incident, and the Grand Juror appears to have no other criminal record.

The Grand Juror further explained that he chose to end his affiliation with the gang when he was about 18 years of age after seeing the negative effect that his gang membership was having on his mother. Since that time, the Grand Juror, who is now in his late twenties, stated that he has not affiliated with the gang or associated with any of its members. The Grand Juror also volunteered that he did not know any of the individuals being investigated by the Grand Jury and noted that his gang involvement of 11 years ago occurred in a different geographic location in the Chicago area. The Grand Juror additionally emphasized that he was now married, and has a young daughter as well as a full-time job. In response to the court's

questions, the Grand Juror stated that he had been faithful to his responsibilities as a member of the Grand Jury and had maintained the secrecy of the Grand Jury proceedings. Government counsel chose not to ask the Grand Juror any questions.

After the meeting with the Grand Juror, the court on June 7, 2007 reconvened the hearing with Government counsel outside the Grand Juror's presence and after hearing from the Government counsel further, the court made oral findings on the record that the Grand Juror was credible and that the evidence was not sufficient to excuse the Grand Juror from grand jury service. Recognizing the Government's concern as well as the sensitivity of the issue, the court orally authorized the Government to conduct further limited investigation related to the telephone call the Grand Juror was observed making on May 17, 2007. The Government has filed no additional written requests for orders to assist in its inquiry of the Grand Juror. The court issues this written order to further explain the court's June 7, 2007 oral order from the bench.

## LEGAL STANDARD

The court has authority to excuse a sitting grand juror or petit juror for good cause pursuant to Federal Rules of Criminal Procedure 6(h), either temporarily or permanently. Fed.R.Crim.P. 6(h). The court additionally may exclude a person summoned for jury service if "such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings." 28 U.S.C. § 1866(c)(2). A juror may also be excluded by the court if his service as a juror "would be likely to threaten the secrecy of the proceedings or otherwise adversely affect the integrity of jury deliberations." *Id.* § 1866(c)(5).

## ANALYSIS

This court recognizes its authority to excuse a grand juror if the grand juror is found to be unable to render impartial grand jury service, if the grand juror's service as a juror would be likely to disrupt the proceedings, threaten the secrecy of the proceedings or adversely affect the integrity of deliberations. 28 U.S.C. § 1866(c). The court also understands the concerns raised by the Government that the Grand Juror's potential involvement in the investigation being presented to the Grand Jury could potentially compromise the investigation and any indictment obtained. Where established, the court must act to ensure that a grand juror does not participate on a grand jury investigating criminal activity with which the grand juror may be either tangentially or possibly directly involved, so that the investigation is not compromised and witnesses are not endangered. The court, however, must balance this objective with the equally important interest of ensuring that a grand juror is not excused based on an improperly discriminatory or speculative basis. The court must be careful not to excuse a grand juror on insufficiently probative evidence that correlates to a cognizable, racial or ethnic group to which the grand juror belongs. *See generally Teague v. Lane,* 489 U.S. 288, 342, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

In this case, there is not sufficient evidence to compel the removal of the Grand Juror from the Grand Jury. This court finds the Grand Juror's explanation that he ended the association that he had had with the identified gang over a decade ago to be credible. The court also finds that the concededly uncertain identification by the Government's CW of the Grand Juror as the gang member the CW believed he may know to be insufficient in light of the Grand Juror's June 7, 2007 explanation to the court. The court found credible the Grand Juror's assurance that he did not know any of the people being investigated by the Grand Jury. Without more information, the Government's presentation is not enough to support a finding that the Grand Juror should be excused from further service on the Grand Jury. Analogous to a judge having discretion not to strike a petit juror who has a relationship with law enforcement but has affirmed the ability to be impartial, *see United States v. Beasley,* 48 F.3d 262, 266–67 (7th Cir.1995), this court in the fair exercise of its discretion will not excuse this Grand Juror given the Grand Juror's credible assurance to this court that he has not associated with the identified gang in over a decade and that he did not know any of the gang members who were being investigated by the Grand Jury.

Furthermore, the persons who are members of the identified gang are primarily also members of one particular race or ethnic group. The Grand Juror is also a member of that race or ethnic group. Consequently, relying on the scant evidence that at one time the Grand Juror belonged to this gang could raise the appearance of improper discrimination against the Grand Juror based on his belonging to the cognizable racial or ethnic group. In raising this concern, the court states that it does not believe that the Government's motion was in any way motivated by the race or ethnicity of the Grand Juror. The court identifies this concern merely to further demonstrate the importance of requiring more information than teen-age membership in a gang more than a decade ago to support excusing any sitting grand juror, especially when the grand juror in question appears to be abiding by his obligations under the law.

The Government has also raised the concern that having the Grand Juror remain on the Grand Jury may disrupt the proceedings because federal agents along with

AUSAs, who do not share this court's confidence in the Grand Juror, may not wish to risk the continued presentation of this case to the Grand Jury, even if the CW's identification is likely erroneous. The court understands the Government's position but believes the lack of sufficient evidence along with concerns about the appearance of excluding jurors based on race or ethnicity outweighs the Government's argument regarding disruption. That said, the court accepts that the Government, as Government counsel suggested at the hearing, may choose to withdraw the investigation from this Grand Jury and present the investigation instead to another convened grand jury. That is a prosecutorial decision to be made exclusively within the Executive Branch and is beyond judicial review.

The court understands that the Government apparently remains concerned about the Grand Juror. Therefore, the court authorizes a further limited investigation by the Government of the telephone records of the Grand Juror's May 17, 2007 phone calls. Because this limited investigation will not require alerting the Grand Juror at this time, there is no issue regarding the Grand Juror's ability to remain impartial toward the Government when the Grand Juror is considering evidence presented to the Grand Jury regarding this or any other investigation.

### CONCLUSION

For the reasons set forth above, the Government may conduct a further limited investigation of the Grand Juror's telephone call on May 17, 2007, and the Government's "Motion to Excuse Grand Jury Member" is denied at this time.