# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-2424

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACK BRODNICKI, ALSO KNOWN AS JACEK LIS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 459—**John W. Darrah**, *Judge.*

———————

ARGUED JANUARY 18, 2008—DECIDED FEBRUARY 15, 2008

———————

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant Jack Brodnicki was in the business of creating false social security cards and other identification documents. In July of 2006, Brodnicki was indicted on charges of transferring a false identification document and attempting to possess with intent to unlawfully transfer five or more false identification documents, in violation of 18 U.S.C. §§ 1028(a)(2), (a)(3), and (f). A jury found Brodnicki guilty on both counts. On appeal, Brodnicki claims that the district court judge, John W. Darrah, abused his discretion during voir dire. Specifically, Brodnicki contends that Judge Darrah erred by failing to excuse potential jurors Varno and Stompanato after they expressed

concern regarding their abilities to be impartial jurors. Brodnicki also argues that Judge Darrah abused his discretion in excusing potential juror Lane for cause when he expressed an inability to be impartial. Brodnicki claims that these errors skewed the jury selection so substantially that his due process rights were violated. For the following reasons, we affirm.

## I. Background

### A. Potential Juror Varno

During voir dire, Varno disclosed that her brother-in-law lost his son as the result of a car accident in which "a cop hit him on his driver's side." The accident resulted in a lawsuit, which remained unresolved at the time of her call to jury duty on Brodnicki's case. Judge Darrah asked Varno, "Is there anything about that experience particularly as you—as it would have been related to you by your brother-in-law that has left you with any ill feelings regarding the justice system or the court system?" Varno responded that there was, to which Judge Darrah inquired whether any of those feelings would affect her ability to be fair and impartial in Brodnicki's case. Varno said, "I hope not." The following dialogue ensued:

> The Court: Well we use words like "I hope not" and "I believe so" in polite company, but it would be your sworn obligation to decide this case based simply on what's presented here in this room, and both parties are entitled to that. Could you do that?
>
> Prospective Juror Varno: Honestly, I don't think so.
>
> The Court: You think you might favor one side over the other here?
>
> Prospective Juror Varno: I'm not sure. I'm sorry.

The Court: Well, no, you're doing exactly what you're supposed to be doing, and that is discussing with us things in your life that may affect your ability to be open-minded here. But, Miss Yarno [sic], if you were called to serve as a juror you would hear the testimony of the witnesses and look at the exhibits, and then you and the other jurors would have to determine the truth, the facts of this case. In doing that, you'd have to set aside anything that would interfere with your ability to be fair and open-minded. Could you do that?

Prospective Juror Varno: I think so.

The Court: Okay. And when you say "I think so," it would be your sworn obligation to do that. Could you do that?

Prospective Juror Varno: Yes.

(Tr. Vol. 1 at 18-21).

At the end of the first jury panel's questioning, Judge Darrah called a side-bar to discuss challenges. Brodnicki's attorney moved to strike Varno for cause on the basis of her initial responses to Judge Darrah's questions, but Judge Darrah denied the motion, stating: "That's denied. She assured me that she would be fair and impartial." Brodnicki's attorney used one of his ten peremptory strikes to exclude potential juror Varno, and Varno was excused.

## B.  Potential Juror Stompanato

Potential juror Stompanato informed Judge Darrah during voir dire that her uncle worked at the Pentagon for many years. Judge Darrah explained to Stompanato that the federal government was a party to the lawsuit

at hand and asked Stompanato whether her uncle's employment with the federal government could cause her to side with one party or the other. Stompanato responded, "I would definitely say I'm more partial to the federal than I would be not partial to the federal government." Judge Darrah inquired further:

> The Court: Would be not be partial to the federal?
>
> Prospective Juror Stompanato: No. I definitely am more prejudiced to the federal.
>
> The Court: Well, if you were sworn to serve as a juror, Miss Stompanato, you would be obligated not to be partial to either side here. You'd be obligated to decide this case based simply on what's presented to you here in this room. Could you do that?
>
> Prospective Juror Stompanato: I would think so, yes.
>
> The Court: Well, Miss Yarno [sic], you want to warn her about using—and in polite company we use phrases like that, but here that would be your sworn duty to do that. Could you do that?
>
> Prospective Juror Stompanato: I wouldn't have a choice, would I?
>
> The Court: Well, if you took an oath to do that, you wouldn't, and you followed the oath, you wouldn't have—
>
> Prospective Juror Stompanato: Yes, if I took an oath I would do that, yes.
>
> The Court: Could you do that?
>
> Prospective Juror Stompanato: I would do that.
>
> The Court: It would be your—

Prospective Juror Stompanato: Yes, yes.

The Court: Well, and as I told you earlier when we first met, there's no wrong answers here, but both sides are entitled to a fair trial.

Prospective Juror Stompanato: Right.

The Court: And a fair trial only comes from twelve impartial people basing their judgment on what's been presented to them here in this room. That's kind of the foundation of our system. Could you do that?

Prospective Juror Stompanato: Yes.

(Tr. Vol. 1 at 53-55).

At side-bar, Brodnicki's attorney moved to strike Stompanato for cause, citing her bias towards the federal government that she "came right out and said." Judge Darrah responded: "Yeah, and I asked her if she would be fair and impartial and decide this case. She said yes." Brodnicki's attorney reminded Judge Darrah that Stompanato answered "I would think so," and Judge Darrah replied: "No, but I asked her not to equivocate, and she answered in a clear unequivocal fashion. That's denied." Brodnicki's attorney then used one of his peremptory challenges to strike potential juror Stompanato, and Stompanato was excused.

### C.  Potential Juror Lane

Potential juror Lane was in the second panel of potential jurors. During the questioning of Lane, Lane stated that his son had been badly beaten by police, and that he preferred not to talk about it. Judge Darrah requested that he discuss it at a side-bar, at which Lane explained that his son had been stopped by police on suspicion of

drug possession, and that the police beat him so badly that he was unconscious and in the hospital for a week. His son was not charged with any crime arising from that event. The following dialogue then took place:

> The Court: I see. Is there anything about that that you think would cause you to be unfair to either of these two sides here?
>
> Prospective Juror Lane: I believe so, Judge.
>
> The Court: You believe you might—
>
> Prospective Juror Lane: Because it's pending in the back of my mind, you know, there's some wrong people and there's some good people.
>
> The Court: Well, both sides here are entitled to a fair trial, and that would require you to sit and listen to the testimony of the witnesses that are presented in this case and the exhibits that you're asked to look at and make a decision based simply on that and put aside this terrible experience you had. Could you do that?
>
> Prospective Juror Lane: Well, I have had experience too with the police. I was locked up for a rental car because they didn't have the papers in it.
>
> The Court: I see.
>
> Prospective Juror Lane: And they handled me with force, you know, that I think they shouldn't have did [sic].
>
> The Court: Do you think that that—do you think that you could be fair and open-minded in this case?
>
> Prospective Juror Lane: I'm not really sure, Judge.

> The Court: Okay. Well, I appreciate your honesty and we'll excuse you. You can go back to the jury room.

(Tr. Vol. 1 at 105-07).

After the parties had finished questioning the rest of the potential juror panel, Judge Darrah again held a sidebar to discuss challenges. Brodnicki's attorney raised an objection to Lane's dismissal for cause, to which Judge Darrah stated that Lane's "demeanor clearly, clearly indicated that he didn't think he could be fair." Judge Darrah asked Brodnicki's attorney why he had not objected sooner since Lane was now gone. Brodnicki's attorney responded: "[I]t's not so much a problem that we—that you struck Lane for cause. The problem we have is that we feel you should have struck the other [two] jurors for cause too." Judge Darrah explained that "if a juror can assure us under oath that the juror can be fair and impartial regardless of the impediment that's being discussed, that if a juror says that, that they qualify to serve as a juror." Judge Darrah also said: "I think Mr. Lane told us he couldn't be fair and impartial. I think it's as easy as that."

Brodnicki then exercised his remaining peremptory challenges and the government exercised five of its six peremptory challenges. The jury was sworn in, and the case proceeded to trial. The jury found Brodnicki guilty on both counts.

## II. Discussion

Brodnicki argues that the district court's refusal to dismiss potential jurors Varno and Stompanato for cause was an abuse of discretion that resulted in a violation of his due process rights. Brodnicki contends that both Varno and Stompanato exhibited clear pro-government biases and should have been dismissed for cause.

The Fifth and Sixth Amendments guarantee due process of law and trial by an impartial jury. *United States v. McClinton*, 135 F.3d 1178, 1185 (7th Cir. 1998). When a prospective juror expresses a belief that is material and contestable (not merely a belief that no rational person would question), the trial judge must determine whether the juror is able to suspend that belief for the duration of the trial. *Thompson v. Altheimer & Gray*, 248 F.3d 621, 627 (7th Cir. 2001); *McClinton*, 135 F.3d at 1186. If the judge determines that the juror cannot render impartial jury service, the judge should dismiss the juror for cause. *See id.*; 28 U.S.C. § 1866(c)(2). Our review of the trial judge's ruling with respect to a challenge for cause is deferential because the trial judge had the opportunity to assess the credibility and demeanor of the potential jurors during voir dire. *See Thompson*, 248 F.3d at 624-25; *United States v. Ray*, 238 F.3d 828, 837 (7th Cir. 2001); *United States v. Beasley*, 48 F.3d 262, 266 (7th Cir. 1995).

Let us begin with potential juror Varno. Varno expressed dissatisfaction with the justice system as a result of an unresolved lawsuit involving her brother-in-law. She did not express a bias in favor or against either party, and after Judge Darrah asked her if she could limit her fact-finding in Brodnicki's case to the evidence presented at trial and not let anything else affect her ability to be fair and open-minded, Varno responded, "I think so." Judge Darrah reminded Varno that it would be her sworn duty to do so, and asked if she could unequivocally do so, to which Varno answered, "Yes." There is nothing in the record to support Brodnicki's assertion that Varno was in any way a "pro-government" juror or that Judge Darrah designed his questioning of Varno to retain her; in fact, her answers might more probably be said to be anti-government. Judge Darrah received an affirmative response that Varno would be capable of being fair and impartial, and absent any real reason to believe otherwise,

we find no error in Judge Darrah's refusal to dismiss Varno for cause.

Next is potential juror Stompanato. Stompanato informed the court that her uncle worked at the Pentagon for several years. When asked, Stompanato said that she was "more prejudiced to the federal [government]." Judge Darrah then asked Stompanato if she would be able to set aside any bias in favor of either party and decide the case based solely on the evidence presented, to which she responded, "I think so." Judge Darrah explained that if she was selected, she would have a sworn duty to do so, and again asked her if she could put aside all biases in deciding the case. Stompanato responded, "Yes, yes." Stompanato never suggested that she would be unable to set aside any bias she may hold in deciding the case, and the mere fact that she had a relative that worked for the government by no means warranted dismissal for cause. *See, e.g.*, *Beasley*, 48 F.3d at 267 (juror who was related to law enforcement employees but assured the trial judge that she could be fair and impartial was properly denied dismissal for cause). Judge Darrah asked Stompanato whether she could be fair and impartial; she unequivocally answered in the affirmative. The district court did not error in denying dismissal of Stompanato for cause.

Finally, we reach potential juror Lane. Lane was dismissed for cause after Judge Darrah perceived Lane's inability to be fair and impartial based on both his and his son's negative experiences with law enforcement. Brodnicki argues that Judge Darrah erred by dismissing Lane while not dismissing Varno and Stompanato for cause. This inconsistency in voir dire, Brodnicki claims, was so substantial that it violated Brodnicki's due process rights to a fair trial.

Unlike Varno and Stompanato, Lane had a direct and personal experience that was a source of potential bias.

Judge Darrah explicitly noted that Lane's demeanor, as well as his statements, clearly showed he could not be impartial. There is no evidence to suggest that Judge Darrah's determination was incorrect or that Lane could have in fact been a fair and impartial juror. There was no error in dismissing Lane for cause and no inconsistency in Judge Darrah's voir dire determinations.

We note that Brodnicki exercised two of his peremptory strikes to exclude both Varno and Stompanato from the jury. This means that none of the jurors whose voir dire is challenged in this appeal sat on the jury. In sum, Brodnicki was not deprived of any rule-based or constitutional right. *See United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000) (so long as the jury that sits is impartial, the Sixth Amendment is not violated, even if defendant has to use a peremptory challenge to achieve that result); *United States v. Polichemi*, 219 F.3d 698, 703-05 (where a district court should have excused a juror for cause, but the juror is excused through a peremptory strike, the district court's error in failing to excuse the juror does not call into question the impartiality of the jury ultimately selected).

## III.  Conclusion

For the foregoing reasons, we AFFIRM.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*